No. 16-4149

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KELLI GRAY; DANE SCOTT; SCOTT BOOLEN;
JOEL FINCH; KIRK D. MILLER,
Interested Parties – Appellants,

v.

MARTHA VASSALLE, ET AL.
Plaintiffs,

MIDLAND FUNDING LLC; MIDLAND CREDIT MANAGEMENT, INC.;
ENCORE CAPITAL GROUP, INC.,
Defendants – Appellees.

ON APPEAL FROM THE U.S. DISTRICT COURT FOR THE NORTHERN
DISTRICT OF OHIO AT TOLEDO

REPLY BRIEF OF APPELLANTS

Kirk D. Miller
Kirk D. Miller, P.S.
421 W. Riverside Ave, Ste 660
Spokane, WA 99201
(509) 413-1494
Counsel for Appellants

## TABLE OF CONTENTS

I. Midland Misrepresents the Causes of Action in the EDWA Second Amended Complaint ...................................................................................................... 4

II. Post-Execution Modification to the Affidavits is Illegal and Not a Released Claim ............................................................................................................... 6

III. Any Ambiguity in the Release and Injunction Was Resolved in *Pelzer* ............. 9

IV. This Court Has Jurisdiction to Decide the Appeal ........................................... 12

V. Conclusion ...................................................................................................... 14

VI. Addendum ....................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. United States*, 201 U.S. 117 (1906) ....................................................13
*Combs v. Ryan's Coal Co.,* 785 F.2d 970 (11th Cir.), *cert. denied sub nom, Simmons v. Combs,* 479 U.S. 853 (1986). .........................................................12
*Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367 (10th Cir. 1996) ...................................................................................................................12
*Donovan v. Mazzola*, 761 F.2d 1411 (9th Cir. 1985) .............................................13
*Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757 (6th Cir. 2014) ..............9
*In re Petro*, 395 B.R. 369 (B.A.P. 6th Cir. 2008) ......................................................9
*Logan v. Pennsylvania R. Co.*, 132 Pa. 403 (1890) ................................................13
*O'Connor v. Midwest Pipe Fabrications,* 972 F.2d 1204 (10th Cir.1992) ..............12
*Pelzer v. Vassalle*, 655 Fed. Appx. 352 (6th Cir. 2016) .....................................4, 10
*S.E.C. v. Hickey*, 322 F.3d 1123 (9th Cir. 2003), *opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey*, 335 F.3d 834 (9th Cir. 2003) ..13
*SEC v. Naftalin,* 460 F.2d 471 (8th Cir.1972) ........................................................12
*Shuffler v. Heritage Bank,* 720 F.2d 1141 (9th Cir.1983) ......................................12

**Statutes**

RCW 5.45.020..........................................................................................................7

**Other Authorities**

28 U.S.C. § 1291....................................................................................................12
Black's Law Dictionary (8th Ed. 2004)..................................................................11

**Rules**

FRE 803 ....................................................................................................................7

### I. Midland Misrepresents the Causes of Action in the EDWA Second Amended Complaint

Midland continues to misrepresent the basis for the claims at issue in the Proposed Second Amended Complaint ("Complaint"), which was filed as an attachment to the *Gray* plaintiff's Motion for Leave to File Amended Complaint. Appellants admit, as they have all along, that the Complaint contains many references to Midland's affiants' illegal practice of executing affidavits without any knowledge of their contents. However, Appellants are unaware, and Midland has never suggested to this Court or any other, that all reference to the facts surrounding the illegal execution of documents, as alleged in both *Gray* and *Vassalle,* is subject to a gag order or confidentiality agreement to which the class is bound. In fact, all briefing leading up to the decision in *Pelzer v. Vassalle*, 655 Fed. Appx. 352 (6th Cir. 2016), as well as the *Pelzer* decision, itself, specifically contemplates class members alleging the same facts contained in the Complaint in order to vacate the fraudulently-obtained judgments. See: *Pelzer at* 360 ("The settlement also preserves the ability of all class members to use the falsity of the attestations of personal knowledge in the affidavits against Midland in their individual debt-collection actions.").

Until Midland filed its motion for contempt, there had never been an allegation by Midland, or a holding of any court, that referencing the fact of the illegal execution of affidavits is, alone, a violation. It is not. Only a lawsuit

requesting relief based solely on the execution without knowledge is barred. Midland cannot escape every reference to its deplorable conduct by invoking the *Vassalle* injunction and seeking sanctions against anyone who dares to make its facts known. Yet, that is exactly what Midland would have this Court believe.

Appellants were aware at the time of filing the Complaint that the *Vassalle* injunction prohibited any cause of action based specifically on the fact that the affidavits were executed without the affiants' knowledge of their contents. While the factual allegations were raised in the Complaint, the relevant portion of the proposed class definition required more than wrongful execution of the affidavits for inclusion in the EDWA lawsuit. Specifically, the relevant portion of the class definition required each eligible person to have been subject to the following practice:

> where a form affidavit, such as "Form 400" or "Form AFFRECORD" was filed with a Court in the state of Washington; and the affidavit was filed on or after August 12, 2009, (the date one (1) year prior to the commencement of this action, 15 USC 1692k(d)); **and the Suttell defendants attached any document(s) other than pleadings to the affidavit before filing**

*Gray* Proposed Second Amended Complaint, R. 295-1, Page ID #5857 (emphasis added)

In other words, the factual allegations that Midland argues violate the *Vassalle* injunction establish that the affiants 1) did not know that any documents would be attached to their affidavits, 2) that the affidavits were sent to the law firm without

- 5 -

any documents attached, and 3) that the law firm modified the affidavits by selecting documents that were not reviewed by the affiants and attaching them to the fully-executed affidavits without the knowledge or permission of the affiants. The class definition makes clear, however, that no member of the putative class would have any viable claim related to the affidavits and would not be entitled to any relief, whatsoever, <u>unless</u> the additional element of post-execution affidavit doctoring by Midland's attorneys was present.

## II.     Post-Execution Modification to the Affidavits is Illegal and Not a Released Claim

The practice alleged is inherently deceptive. While Midland asserts at fn. 5 of its response brief that "It is not illegal for an attorney to assemble and file documents with the court", this statement completely misses the point of the allegation. The indisputably illegal practice complained of in the Complaint is that the law firm received fully executed affidavits from Midland. Whether it was executed with or without the affiant's knowledge of its contents, the law firm "assembled" it by materially changing the affidavit after it was fully executed and after it arrived in Washington state[1]. There is no claim that Midland's attorneys

---

[1] The affidavits were executed in Minnesota and the original, fully-executed, affidavits were mailed to the law firm in Washington State. No documents were attached to the affidavits when they were mailed from Minnesota to Washington, and we know from *Vassalle* and the *Gray* actions that the affiants did not review any documents before executing the affidavits. The affiants were not told that

contacted the affiants to get their approval for the alterations or that the affiants were ever even told that their affidavits might be changed.

The law firm employees attached documents to the back of the affidavit in an effort to make them appear to defendants and the courts where they were filed as business records that were authenticated by the affiants who claimed to be custodians of the records, but in reality, had never seen the documents or knew that any document would ever be attached. The law firm used the affidavit as the equivalent of a blank check to introduce and seek admission of whatever "evidence", in their opinion, best fit the case. The practice was designed to avoid the rule against hearsay by making the documents look like business records[2]. Any consideration of the evidence by a court would have necessarily assumed that the affiant reviewed and attached the documents, or that the affiant at least knew which documents would be attached by the law firm at the time of execution[3]. Both assumptions were wrong and the law firm took no steps to correct the repeated misrepresentations.[4] The result

---

documents would be attached to their affidavits before they were filed in the courts.

[2] Washington codified the equivalent of FRE 803(6) at RCW 5.45.020

[3] Washington Court Rule 56(e) requires in relevant part that: "supporting and opposing affidavits shall be made a personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the accident is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or serve there with."

[4] Washington Rule of Professional Conduct 3.3 prohibits an attorney from making, or failing to correct, a false statement of material fact or law to a tribunal. If the

was a massive fraud on the courts throughout the country, which has not been previously litigated or even alleged in any complaint other than in EDWA.

Midland's argument for the propriety of this systematic deception is astonishing and quite disturbing. While they claim that attorneys routinely assemble affidavits for their clients, it cannot possibly be ethical for attorneys to alter other people's sworn statements without their knowledge or consent, especially after their affidavit has been executed. If that were so, nothing would prevent debt collection lawyers from altering account balances, charge-off dates, social security numbers, or even the names of the defendants, all in the name of standard attorney procedure. Any attorney could alter an affidavit to suit emerging needs of the case. Attorneys could invent facts, not as they happened, but rather as they wish them to be, and insert them into another person's sworn statement without their knowledge. Those sworn statements would be submitted to the court, bearing the same evidentiary weight as any other sworn statement that was executed by a person who had actual knowledge of the fact and could properly testify.

The efficient out-of-court sworn testimony allowed in many cases by affidavit would be effectively undermined, along with the public's trust in the legal system.

---

lawyer has offered material evidence and comes to know of its falsity, the lawyer shall promptly disclose this fact to the tribunal. To date, the Suttell firm has made no effort to correct the false information in the form of modified affidavits that it provided to the courts in thousands of cases.

If Midland's counsel, Ms. Gallegos, actually believes what she asserts in her client's brief about the propriety of altering affidavits without her client's knowledge or consent, then she, along with her entire law firm, should be investigated by the bar associations wherever she has practiced and attempted to introduce any affidavit in court.

### III.     Any Ambiguity in the Release and Injunction Was Resolved in *Pelzer*

The intent of the *Vassalle* settlement and release "is presumed to reside in the language they chose to employ in the agreement." *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 768 (6th Cir. 2014). Every word of the settlement should be given effect. See e.g. *In re Petro*, 395 B.R. 369, 375 (B.A.P. 6th Cir. 2008). The relevant portion of the agreement states that the released claims are those "arising out of or relating to the use of affidavits in collection lawsuits brought by the Defendants, where the affidavit used was executed by a person who lacked personal knowledge of the facts stated in the affidavit." Final Approval Order, R. 282, Page ID # 5636. If the parties to that agreement intended that the result would be a complete bar against the litigation related to any use of the affidavits, that could have been easily drafted by leaving off the qualifying phrase. Instead, the parties qualified to release with "where the affidavit used was executed by a person who lacked personal knowledge of the facts stated in the affidavit." Unless this modifier limits the scope of the released claims, it is simply superfluous. That is not how the added

language should be construed.  The qualifying phrase was intentionally added and should not be ignored.

Recognizing that the scope of the release and injunction was limited by the additional clause, this Court interpreted the scope of the released claims consistent with the Appellants' understanding: "Lest there be any ambiguity as to what the revised release means, the agreement specifies that "this release applies to any action [under the FDCPA, state consumer-protection laws, and state or federal common law] in which a Class Member seeks any relief <u>on the ground that an affidavit</u> … <u>was executed</u> by a person who lacked personal knowledge of the facts stated in the affidavit." *Pelzer v. Vassalle*, 655 Fed. Appx. 352, 367 (6th Cir. 2016)(emphasis added).  Once the revised *Vassalle* release was approved by this Court, Appellants abandoned all claims under state and federal law based on the illegal <u>execution</u> of the affidavits.  However, since the release did not specifically contemplate post-execution modifications to the affidavits by Midland's attorneys, either specifically or by reference, those claims remained in the Complaint.

Apparently unable to reconcile their position on the scope of the release with the actual language of the release and this Court's interpretation in *Pelzer*, Midland is now attempting to re-write the release, deceptively modifying the actual language and replacing it with a substitute release that better fits its argument.  Midland now claims that the release extends to all claims "arising from their use of affidavits

executed by an applicant who lacked personal knowledge of the facts stated in the affidavit." Brief of Defendants-Appellees, pg. 9. This borderline-dishonest mischaracterization of the release is not what was bargained for. By altering the modifying clause, Midland's new interpretation of the release implies that any and all claims against Midland for improper use of affidavits are covered under the release, so long as the affidavit was also executed without personal knowledge. This Court rejected that very theory. "Claims alleging other illegal, abusive, unfair, or deceptive practices by Midland with respect to the affidavits are not released, and class members remain free to sue Midland for those practices." *Pelzer at* 361.

Per Black's Law Dictionary, "execute" means in relevant part: "3. To make (a legal document) valid by signing: to bring (a legal document) into its final, legally enforceable form". Eighth Edition (2004). In this case, the affidavit was executed (signed) by one of the Midland robo-signers in Minnesota and then mailed to Washington State, where they were illegally altered by Midland's attorneys before they were filed in Washington courts. *Gray* Proposed Second Amended Complaint, R. 295-1, Page ID # 5775-5777. The law firm's post-execution doctoring of the affidavits clearly falls into the "other illegal, abusive, unfair, or deceptive practices" that were specifically preserved for future litigation following the *Vassalle* settlement. *Id.*

## IV. This Court Has Jurisdiction to Decide the Appeal

The holding of *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996) is exactly the opposite of what Midland represented to this Court. While in that case, as here, the Plaintiff/Appellee argued that the court did not have jurisdiction over the Defendant/Appellant's appeal from a contempt order, the court rejected that argument. *Consumers*, citing to the court's holding in *O'Connor v. Midwest Pipe Fabrications,* 972 F.2d 1204, 1208 (10th Cir.1992), held that:

> On the question of finality, we are mindful of the general rule that "a finding of civil contempt is not reviewable on interlocutory appeal." *Combs v. Ryan's Coal Co.,* 785 F.2d 970, 976 (11th Cir.), *cert. denied sub nom, Simmons v. Combs,* 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 120 (1986). Despite this rule, however, in the *postjudgment* stage of a case, "[o]nce the finding of contempt has been made and a sanction imposed, the order has acquired all the 'elements of operativeness and consequence necessary to be possessed by any judicial order to enable it to have the status of a final decision' " under 28 U.S.C. § 1291 (1976). *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1145 (9th Cir.1983) (quoting *SEC v. Naftalin,* 460 F.2d 471, 475 (8th Cir.1972)).

Ultimately, the *Consumers* court held that they did have jurisdiction, and reversed the trial court's order of contempt.

All of the other cases cited by Midland in support of its jurisdictional theory of dismissal involved attempts at interlocutory appeals. In this case, there is a final judgment. The issue in those cases was not whether the appellate court could decide

an appeal from a contempt order, but whether the contempt finding was a final order that was appealable by right.

Midland's arguments regarding the imposition of sanctions as a requirement of review are likewise misplaced. The relevant portion of *S.E.C. v. Hickey*, 322 F.3d 1123 (9th Cir. 2003), *opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey*, 335 F.3d 834 (9th Cir. 2003) based its decision on the holding of a *Donovan v. Mazzola*, 761 F.2d 1411, 1416 (9th Cir. 1985), which in turn based its decision on *Alexander v. United States*, 201 U.S. 117, 122, 26 S. Ct. 356, 358, 50 L. Ed. 686 (1906) (no jurisdiction for appeal of the trial court's pre-trial discovery order) and *Logan v. Pennsylvania R. Co.*, 132 Pa. 403, 19 A. 137 (1890) (also dealing with appeal of a pre-trial discovery order). The sound principle held in those cases is that an order which would otherwise be interlocutory and not appealable becomes immediately appealable by imposition of sanctions. In this case, however, there is no time in the future when the district court's holding will become any more final than it was at the time it was issued. There is no future event contemplated which will cause the order to transform into a final judgment. The contempt order appealed from here, which included the sanction of withdrawing the Complaint and notifying the named class members under threat of additional sanctions, was a final ruling in every sense, and is therefore appealable as a matter of right.

## V. Conclusion

The district court erred in holding the Appellants in contempt. While the factual allegations section of the Complaint references the illegal affidavit execution procedure, Appellants did not and do not intend to seek any relief solely because the affidavits were executed without knowledge. Rather, the basis for relief requires that, whether the affidavit was executed with or without knowledge, Midland's attorneys materially altered the affidavits, post-execution, before they were filed in Washington courts. The claim for relief is allowed under a plain reading of the *Vassalle* settlement agreement, and further supported by this Court's analysis in *Pelzer*. Appellants urge the Court to reject Midland's broad interpretation of settlement agreement and disregard their self-serving rewording of the agreement set forth in their response brief. Such an interpretation would undermine this Court's understanding and analysis of the agreement, and foreclose any lawsuit based in any way on the illegal use of a Midland affidavit.

Even if this Court ultimately disagrees with the Appellants, a cause of action based on illegal post-execution doctoring of affidavits by Midland's attorneys is a viable interpretation of the settlement agreement, so a contempt order was inappropriate in any event. The Appellants' challenge to Midland's self-serving interpretation of the agreement does not indicate that the Complaint was brought in bad faith or vexatiously. It was not. Midland's ad hominem attacks on counsel,

should be disregarded. Appellants challenged the district court's order based solely on their continuing belief that the court erred in holding that their claims were barred by the injunction.

For these reasons, the Appellants respectfully request that this Court REVERSE the district court's contempt order and hold that Appellants' cause of action based on post-execution alterations to the Midland affidavits does not violate the *Vassalle* injunction.

Respectfully submitted this 26th day of January, 2017.

s/ Kirk D. Miller<br>
Kirk D. Miller

## VI.   **ADDENDUM**

R. 1, Complaint ............................................................................ Page ID #1

R. 295, Defendants' Motion to Enforce ...................................... Page ID #5750

R. 295-1, Decl. of Seitz ............................................................... Page ID #5769

R. 295-1, *Gray* Proposed Second Amended Complaint ............... Page ID #5773

R. 295-1, *Gray* Reply ................................................................. Page ID #5871

R. 298, Order ............................................................................... Page ID #5889

R. 309, Response to Defendants' Motion to Enforce ................... Page ID #5981

R. 310, Reply to Plaintiff's Response .......................................... Page ID #5990

R. 312, Order Re: Injunction and Contempt ................................ Page ID #6005

R. 314, Transcript of 9/30/16 Hearing ......................................... Page ID #6015

R. 315, Certification of Compliance ............................................ Page ID #6025

R. 316, Notice of Appeal ............................................................. Page ID #6028