**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 16-4149

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| MARTHA VASSALLE, et al., )<br>)<br>    Plaintiffs, )<br>)<br>and )<br>)<br>KELLI GRAY; KIRK D. MILLER, )<br>)<br>    Interested Parties-Appellants, )<br>)<br>v. )<br>)<br>MIDLAND FUNDING, LLC, et al., )<br>)<br>    Defendants-Appellees. ) | **FILED**<br>Jul 17, 2017<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |

O R D E R

Before: COLE, Chief Judge; DAUGHTREY and DONALD, Circuit Judges.

This is an appeal of the district court's order finding attorney Kirk D. Miller and his client, Kelli Gray, in contempt for continuing to pursue claims that the court ruled had been satisfied by a prior class-action settlement. The parties have waived oral argument, and this panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

This case originated in a class action alleging that a debt-buying company, Midland Funding, LLC, and its related parties, Midland Credit Management, Inc., and Encore Capital Group, Inc. (collectively referred to as "Midland"), carried out a robo-signing scheme in hundreds of state court debt-collection actions. The plaintiffs claimed that the defendants violated the Fair Debt Collection Practices Act ("FDCPA") and similar state laws by routinely

executing form affidavits in which the affiants falsely swore to having personal knowledge of the facts alleged in the documents. In 2011, the parties reached a settlement, which the United States District Court for the Northern District of Ohio approved. The class included all natural persons that Midland had sued over a certain time period "in any debt collection lawsuit in any court . . . where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt collection lawsuit." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 752-53 (6th Cir. 2013).

Class objectors appealed the district court's judgment approving the settlement, and we reversed. *Id*. at 760. On remand, the parties reached a revised settlement agreement, which the district court approved. Except for a slight modification to the operative time period, the definition of the class was unchanged from the previous settlement agreement. The revised settlement also released Midland and its related companies, agents, and the like from, and enjoined prosecution of, all claims "arising out of or relating to the use of affidavits in debt-collection lawsuits brought by [Midland], where the affidavit used was executed by a person who lacked personal knowledge of the facts stated in the affidavit." The district court's October 14, 2014 judgment entry enjoined the parties in accordance with the settlement agreement. Objectors again appealed, and, this time, we affirmed the district court's judgment. *Pelzer v. Vassalle*, 655 F. App'x 352, 369 (6th Cir. 2016).

Meanwhile, Miller, on behalf of his clients, including Gray, had filed two complaints against Midland in the United States District Court for the Eastern District of Washington. The first alleged affidavit-related claims and was consolidated with the class action in the federal district court in Ohio. The second suit, against Midland and its debt-collection attorneys, Suttell & Associates, alleged claims under the FDCPA and Washington state law. Shortly after the Ohio district court enjoined parallel litigation in the class action, Miller and his clients filed an amended complaint in the second Washington suit. It contained no claims about the affidavit practices and thus was not subject to the October 14, 2014 injunction.

While the class-action settlement was being appealed, Miller and his clients moved for leave to file a second amended complaint in their second case in the Washington district court. Among other causes of action, the proposed complaint asserted claims under the FDCPA against the Suttell firm, alleging that the plaintiffs received executed affidavits from Midland and then attached supporting documents that the affiant was not aware of. Midland believed that these claims fell under the class-action settlement's release and that Miller's clients were enjoined from pursuing them because they did not opt out of the settlement, so it filed a motion in the Ohio district court to enforce the injunction and hold Miller and his clients in contempt.

After we issued our decision affirming the class-action settlement, Miller and his clients responded to the injunction-and-contempt motion in the Ohio district court. They argued that their claims did not fall within the scope of the injunction because they did not seek relief on the ground that affidavits used in their debt-collection actions were executed by someone who lacked personal knowledge of the facts in the affidavit. Instead, they maintained that their claims were against the Suttell firm for altering the false affidavits by attaching documents after the fact. As Miller's plaintiffs put it, "regardless of what the affiant believed, and regardless of the veracity of the statements made by the affiants, the Defendants' lawyers materially altered the affidavits after they left the Defendants' affidavit factory by attaching documents to the affidavits without the knowledge or consent of the affiants." They further argued that these alleged actions by the Suttell firm were "[n]ever contemplated in the discussions leading up to the settlement," and that the special master appointed by the settlement to oversee Midland's affidavit process going forward was not tasked with stopping this practice. To further support their argument that their claims were not barred, Miller's plaintiffs latched onto a quote from this court's opinion affirming the revised settlement: "This case is about a very specific issue: Midland's use of affidavits in debt-collection actions where the affiants falsely attest to have personal knowledge of the consumers' accounts. This case is not about Midland's other alleged abusive practices in its business of buying and then collecting consumer debt accounts." *Pelzer*, 655 F. App'x at 359.

After holding a phone conference on the matter, the district court ruled that the claims against Suttell in the proposed second amended complaint fell within the settlement's release clause and, thus, were barred by the injunction. The district court ruled that the proposed complaint alleged that "Midland and its attorneys violated the FDCPA and state laws by filing affidavits in debt collection lawsuits that were executed by a person who lacked personal knowledge of the facts stated in the affidavit," which were "the precise claims that were released by the Revised Settlement." The court noted that the proposed second amended complaint contained numerous allegations "describing how Midland allegedly uses affidavits made without personal knowledge," including that the Suttell firm "approved and filed affidavits they knew or should have known were 'false, unfair, and deceptive.'" Thus, the district court found that Miller and his clients had violated the court's injunction. The court directed them to withdraw the motion for leave to file a second amended complaint and threatened to hold a hearing to impose sanctions if they did not. Miller and his clients withdrew the motion, and Miller and Gray now appeal the district court's order.

On appeal, Miller and Gray argue that their proposed claims against the Suttell firm do not fall within the release or injunction. Even if they did, Miller and Gray continue, the claims did not clearly and unambiguously fall within the release or injunction, and, therefore, they argue that the district court's contempt finding was in error. The defendants argue in support of the district court's order on the merits. However, they also argue that we lack jurisdiction over the appeal. Further, they argue that Miller should be sanctioned or at least admonished for misrepresenting the record on appeal.

We start with Midland's jurisdictional argument. Midland argues that we lack jurisdiction to review the district court's contempt order because, as the order did not impose sanctions, it was not final and appealable. But the district court did not merely find Miller and his clients in contempt; it also ordered them to withdraw the motion for leave to file a second amended complaint. Plainly, that was a sanction, even though the court threatened additional

sanctions if they failed to comply with that order. Therefore, the order was final and appealable under 28 U.S.C. § 1291, and we have jurisdiction to review it.

Turning to the merits of the district court's contempt finding, we stress that federal courts have inherent authority to enforce injunctions through civil-contempt orders, *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015), including those imposed upon approval of a class-action settlement. *See Bedel v. Thompson*, No. 91-3448, 1992 WL 44883, at *4 (6th Cir. Mar. 4, 1992). The party moving for an order of contempt must prove by clear and convincing evidence that the respondent clearly and unambiguously "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 550 (6th Cir. 2006) (quoting *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991)). And any "[a]mbiguities must be resolved in favor of the party charged with contempt." *Id*. at 551.

We review a district court's civil-contempt finding for an abuse of discretion. *Id*. at 550. "A district court abuses its discretion when it relies on an incorrect legal standard, misapplies the correct legal standard, or judges the outcome based on factual findings that are clearly erroneous." *In re Morning Song Bird Food Litig.*, 831 F.3d 765, 771 (6th Cir. 2016). Miller and Gray's argument that the injunction does not bar their claims challenges the district court's legal determination, and, thus, it is reviewed de novo. *See Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 721 (6th Cir. 1996); *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1748 n.2 (2014) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law.") (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

Miller and Gray attempt to thread a fine needle. Their proposed second amended complaint is filled with allegations that Midland defendants—including the Suttell firm—falsely averred to having personal knowledge of the information contained in affidavits, and they admit that claims based on those allegations are barred by the settlement and injunction. But they

argue that their claims concern the Suttell firm's "further modifying the affidavits without the affiant's knowledge," which they maintain was not part of the settlement or injunction. The release, however, specifically includes Midland's attorneys, and it shields them from any claims "arising out of or relating to the use of affidavits in debt-collection lawsuits brought by [Midland], where the affidavit used was executed by a person who lacked personal knowledge of the facts stated in the affidavit." That language encompasses claims about the Suttell firm's alleged practice of attaching documents to already executed affidavits without the affiants' knowledge. Miller and Gray assert otherwise, arguing that their claims do not rely on the truth or falsity of the statements by the affiant but instead focus on the law firm's practice of attaching documents after the fact. Yet that claim still arises out of or relates to the use of an affidavit that was executed by a person who lacked personal knowledge of the facts contained in the affidavit. Therefore, the district court's finding of contempt was not an abuse of discretion.

Lastly, the Midland defendants' request for sanctions or an admonishment is **DENIED**.

Accordingly, we **AFFIRM** the district court's order.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk